IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

JOSE R. GUERRERO, aka JUAN RAMIERZ GUERRERO, aka JOSE GUERRERO-RAMIREZ,

        Defendant.

CV-10-525-ST

FINDINGS AND RECOMMENDATIONS

STEWART, Magistrate Judge:

**INTRODUCTION**

Plaintiff, the United States of America ("Government"), initially filed this action on November 24, 2009, as Case No. 09-1400-KI ("*Guerrero I*"), pursuant to Section 340(a) of the Immigration and Nationality Act, 8 USC § 1451(a), to revoke and set aside the order admitting defendant, Jose R. Guerrero ("Guerrero"), to citizenship and to cancel the Certificate of Naturalization No. 21818888 issued pursuant to that order. However, the Government failed to

1 - FINDINGS AND RECOMMENDATIONS

attach an affidavit showing good cause as required by 8 USC § 1451(a).  Guerrero filed a motion to dismiss, for judgment on the pleadings, and for summary judgment, arguing, in part, that without the affidavit attached to the Complaint, the court had no jurisdiction.  Judge King granted Guerrero's motion and dismissed *Guerrero I* without prejudice.  On May 5, 2010, the Government filed this identical action and attached the requisite affidavit of good cause to the Complaint.

To revoke Guerrero's naturalization, the Government alleges that Guerrero illegally procured United States citizenship because he: (1) committed crimes of moral turpitude during the statutory period (Count I); (2) committed acts of child sexual abuse during the statutory period (Count II); and (3) lied under oath and concealed and willfully misrepresented material facts about his crimes of child sexual abuse (Count III).  This court has jurisdiction under 28 USC § 1345 and 8 USC § 1451(a).

The Government has filed a motion for summary judgment on all three counts (docket #7).  Guerrero also has filed a motion for summary judgment (docket #11), arguing that Count I fails to state a claim for denaturalization under 8 USC § 1101(f)(3) and that the entire Complaint is barred due to dismissal of *Guerrero I*.

For the reasons set forth below, the Government's motion should be granted based on Count II and Guerrero's motion should be denied.

///

///

///

///

2 - FINDINGS AND RECOMMENDATIONS

## BACKGROUND

### I. Naturalization Proceedings

Guerrero was born in Mexico and became a lawful permanent resident of the United States on December 1, 1990. Certified A-File ("CAF"), p. 6.[1] On January 19, 1996, Guerrero completed Form N-400, an Application for Naturalization, Immigration and Naturalization Service ("INS"). *Id*, p. 9. To complete the form, he enlisted the help of Correros, Inc., a business located in Hillsboro, Oregon, that had helped him prepare his taxes. Guerrero Decl., ¶ 3.[2] Correros, Inc., completed the form, but Guerrero does not recall discussing with anyone at Correros, Inc., his responses to the questions. *Id*, ¶ 4. He did not read the completed form because he "couldn't really understand its language" and trusted Correros, Inc., to complete the form correctly. *Id*, ¶ 6. He signed the form, certifying "under penalty of perjury under the laws of the United States of America that this application, and the evidence submitted with it is all true." CAF, p. 9. At that time, he lived with his wife Yvette Castillo, a United States citizen. Guerrero Decl., ¶ 7. However, in "about April" 1996, they began having difficulties, and he left the residence to live with his brother, also in Hillsboro. *Id*. He moved back to his wife's home in October 1996. *Id*.

On March 28, 1996, the INS received Guerrero's application. CAF, p. 6. Guerrero applied for naturalization on the ground that he had been a permanent resident for at least five years in accordance with 8 USC § 1427(a) or for three years and married to a United States

---

[1] The CAF is attached as Exhibit 1 to the Government's motion.

[2] Guerrero's Declaration is attached as Exhibit 1 to his response to the Government's motion (docket #10).

citizen for those three years, in accordance with 8 USC § 1430(a). *Id*. In response to Question 15a of his Form N-400, Guerrero checked "no" to the question whether he had "ever knowingly committed any crime for which [he] had not been arrested." *Id*, p. 8.

On June 19, 1996, Guerrero appeared at a hearing for his petition for naturalization where he was interviewed for about 15 minutes by an INS officer. *Id,* pp. 5, 9; Guerrero Decl., ¶ 9. Guerrero recalls being asked questions about United States history and government, but does not remember being asked any other questions. Guerrero Decl., ¶ 9. On July 22, 1996, he signed Form N-445A certifying that nothing had changed since his interview. CAF, pp. 2-3. On July 25, 1996, after taking the oath of allegiance, he was admitted to United States citizenship and received a Certificate of Naturalization number 21818888. *Id*, p. 52.

## II. Guerrero's Criminal History

On March 6, 2001, Guerrero was charged by indictment in the Circuit Court of the State of Oregon for Washington County in violation of ORS 163.405 (Sodomy in the First Degree – Victim under 12 years old) and ORS 163.427 (Sexual Abuse in the First Degree – Victim under 14 years old) for conduct involving his step-daughter. *Id*, pp. 30-32. On April 2, 2002, Guerrero entered a plea of no contest to the child sodomy charge (Count 1) for acts committed between June 30, 1990, and August 1, 1991, and guilty to four counts of child sexual abuse (Counts 5-8) for acts committed between August 5, 1991, and June 30, 1994. *Id*, pp. 23-27.

On May 17, 2002, Guerrero was sentenced on the child sodomy count to 36 months in prison and 20 years of post-prison supervision, subject to other conditions, including being required to register as a sex offender for the rest of his life. *Id*, pp. 28-29. He also was sentenced

4 - FINDINGS AND RECOMMENDATIONS

to 180 sanction units, 10 years of probation, and a fine of $3,325.00 on the four counts of child sexual abuse. *Id*.

## STANDARDS

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to a judgment as a matter of law." The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but only [determine] whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

## FINDINGS

**I. Standard for Denaturalization**

Citizenship, once conferred, should not be taken away without the clearest justification and proof. *Schneiderman v. United States*, 320 US 118 (1943); *Gorbach v. Reno*, 219 F3d 1087, 1100 (9th Cir 2000). In an action under 8 USC § 1451(a) to revoke a grant of United States citizenship previously conferred, the facts and the law should be construed as far as reasonably possible in favor of the citizen. *Schneiderman*, 320 US at 122. "The evidence justifying revocation of citizenship must be clear, unequivocal, and convincing and not leave the issue in

doubt." *Fedorenko v. United States*, 449 US 490, 505 (1981) (quotations omitted). Once the court has determined that the government has met its burden of proof, it has no discretion to excuse the conduct. *Id* at 517.

Under 8 USC § 1451(a), a citizen's naturalization must be revoked and his certificate of naturalization canceled if his naturalization was either illegally procured or procured by concealment of a material fact or by willful misrepresentation. There must be strict compliance with all congressionally imposed prerequisites to the acquisition of citizenship. *Fedorenko*, 449 US at 506. Failure to comply renders the certificate "illegally procured," and the naturalization can be set aside. *Id*; 8 USC § 1451(a).

Although the government bears a heavy burden in denaturalization proceedings, the facts of a case may be such that a revocation of citizenship at the summary judgment stage may be appropriate. *United States v. Dailide*, 227 F3d 385, 389 (6th Cir 2000); *see e.g.*, *United States v. Dang*, 488 F3d 1135 (9th Cir 2007); *United States v. Koreh*, 59 F3d 431 (3rd Cir 1995).

## II. Government's Motion for Summary Judgment

### A. Count I

Count I alleges that Guerrero illegally procured citizenship because he was not a person of good moral character as evidenced by his commission of crimes of moral turpitude during the statutory period for which he was later convicted. This claim is based on 8 USC § 1101(f)(3) which provides as follows:

> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was – . . . a member of one or more of the classes of persons, whether inadmissible or not, described in . . . subparagraphs (A) and (B) of section 1182(a)(2) of this title . . . if the

>offense described therein, for which such person was convicted or of
>which he admits the commission, was committed during such period.

Being convicted of crimes of moral turpitude is a ground of inadmissibility under 8 USC § 1182(a)(2)(A). The statutory period referred to in 8 USC § 1101(f)(3) is five years immediately preceding the date of filing the citizenship application. 8 USC § 1427(a). However, that period is shortened to three years for persons living in marital union with a spouse who is a United States citizen. 8 USC § 1430.

Although Guerrero's conviction occurred after his naturalization, the Government contends that 8 USC § 1101(f)(3) applies because the conduct for which he was convicted occurred during the statutory period. Guerrero responds that for 8 USC § 1101(f)(3) to result in a finding of a lack of good moral character, his conviction or admission, and not the conduct for which he was convicted, must occur within the statutory period. Because his conviction did not occur within either statutory period of five years or three years, he seeks summary judgment against Count I.

As discussed below, this court finds that the Government is entitled to summary judgment as to Count II and need not resolve this issue.

### B. Count II

Count II alleges that Guerrero's naturalization should be revoked because he committed acts of child sexual abuse during the statutory period of time. This claim is based on the "catch-all" provision of 8 USC § 1101(f) which provides that: "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or

was not of good moral character." An INS regulation expands on those "other reasons" as follows:

> In accordance with section 101(f) of the Act [8 USC § 1101(f)], the Service shall evaluate claims of good moral character on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence.

8 CFR § 316.10(a)(2).

This regulation also contains a "catch-all" provision providing that applicants who have committed acts adversely reflecting on moral character during the statutory period cannot establish the requisite good moral character:

> Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant . . . [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts although the act do not fall within the purview of § 316.10(b)(1) or (2).

8 CFR § 316.10(b)(3).

Guerrero's Answer admits that he pled guilty to Counts 5-8 of the indictment for child sexual abuse committed between August 5, 1991, and June 30, 1994. Answer, ¶¶ 16e & f. His Answer also admits that he pled no contest to Count 1 for child sodomy[3] committed between June 30, 1990, and August 1, 1991. *Id*, ¶ 16c & d.

Despite these admissions, Guerrero seeks to raise a genuine issue of material fact as whether he committed these acts within the statutory period. First, he argues that the relevant statutory period is three years because he was "living in marital union" with his wife who is a

---

[3] The Answer states that Guerrero was convicted in Count 1 of child sexual abuse in the first degree, while the judgment states he was convicted in Count I of child sodomy in the first degree. CAF, p. 23.

United States Citizen for three years "immediately preceding the filing of petition," which was one of the bases for his application for naturalization. 8 USC § 1430(a); 8 CFR § 319.1(a)(7). Since he filed his application on March 28, 1996, the three-year period extends back to March 28, 1993.

Guerrero admits that he lived apart from his wife from approximately April to October 1996. Guerrero Decl., ¶ 7. He contends that this is not a separation resulting in a loss of his marital union for the three-year statutory period, citing 8 CFR 319.1(b)(2)(ii)(B) ("Any informal separation that suggests the possibility of marital disunity will be evaluated on a case-by-case basis to determine whether it is sufficient enough to signify the dissolution of the marital union."). However, another part of that regulation provides that "[a]n applicant lives in marital union with a citizen spouse if the applicant actually resides with his or her current spouse." 8 CFR § 319.1(b)(1).

The Government questions Guerrero's declaration as "carefully parsed" when referring to "about April" 1996 and contends that it is highly unlikely that he was living with his wife on March 28, 1996, when he filed his application. However, it is also highly unlikely that Guerrero would recall an exact date occurring over 14 years ago. At this point, the court must accept the truth of Guerrero's declaration and cannot reject it based on the Government's suspicion as to its credibility. Therefore, for the purpose of the Government's motion, this court must assume that Guerrero was living with his wife on March 28, 1996, and is eligible for the three-year statutory period.

Second, Guerrero seeks to raise a genuine issue of material fact as to whether he committed the acts of child sexual abuse within the three-year period. Even though he entered a

9 - FINDINGS AND RECOMMENDATIONS

plea of guilty for this crime, he contends that the dates on which he committed these acts was not a material element of child sexual abuse and that the Government has not satisfied its burden to prove that any of the acts occurred within the three-year period.

This argument is unpersuasive for a couple of reasons. First, Guerrero is collaterally estopped from challenging the fact of his convictions for child sexual abuse or the facts to which he pled guilty. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 US 90, 94 (1980). The same applies to state court judgments whenever the courts of that State would do so. *Id* at 96. To foreclose relitigation of an issue, "(1) the issue must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Trevino v. Gates*, 99 F3d 911, 923 (9th Cir 1996).

Assuming that the three-year statutory period applies, the issue is Guerrero's commission of crimes of moral turpitude between March 28, 1993, and his date of naturalization on July 25, 1996. The issue in his criminal proceedings was his commission of child sexual abuse between August 5, 1991, and June 30, 1994. CAF, pp. 28, 30. The three-year statutory period overlaps those dates by 15 months (March 28, 1993, until June 30, 1994). A guilty plea to a criminal charge is "actually litigated" for preclusive effect because the court accepting the plea must ensure that the plea is founded on fact. *See Dodd v. Hood River County*, 136 F3d 1219 (9th Cir 1998), citing *State Farm Fire & Cas. Co. v. Sallak*, 914 P2d 697, 700 (1996). Finally, the

10 - FINDINGS AND RECOMMENDATIONS

determination of whether Guerrero committed at least four separate acts of child sexual abuse in the prior litigation was a critical and necessary part of the judgment. CAF, pp. 28, 30. Therefore, Guerrero is collaterally estopped from denying his convictions and the facts underlying them.

Second, once the Government has submitted evidence of a conviction for child sexual abuse based on acts committed between dates certain, it has satisfied its heavy burden of clear, unequivocal, and convincing evidence that Guerrero committed unlawful acts during the statutory period that adversely reflect upon his moral character. The burden on summary judgment then shifts to Guerrero to create an issue of genuine fact as to the exact date of each occurrence of child sexual abuse. However, he has neither denied that he committed the acts of child sexual abuse as late as June 30, 1994, nor submitted any evidence to undermine the record of conviction.[4] Raising some doubt, without coming forward with specific evidence, as to the exact dates is not sufficient to create a genuine issue of material fact to avoid summary judgment. *Matushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 US 574, 586 (1986) ("opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

Furthermore, immigration officials may look outside the statutory period to determine that an applicant lacks good moral character:

> The Service is not limited to reviewing the applicant's conduct during the [statutory period], but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period if the conduct of the applicant during the

---

[4] The Government notes that according to the police reports, the child reported sexual abuse at least up to age 10. CAF, p. 41. Since the child was born January 1, 1984 (*id*, p. 39), the abuse occurred through January 1, 1994, well within the three-year statutory period. Because Guerrero disputes the admissibility of this hearsay evidence and its admissibility has not been fully briefed by the parties, this court will not consider it.

11 - FINDINGS AND RECOMMENDATIONS

> statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character.

8 CFR § 316.10(a)(2).

As held by the Ninth Circuit, a court must consider convictions that occurred prior to the statutory period because they are "highly relevant" to the applicant's moral character. *United States v. Hovesepian*, 359 F3d 1144, 1158 (9th Cir 2004); *see also United States v. Hovesepian*, 422 F3d 883, 886 (9th Cir 2005) ("conduct outside the regulatory period is relevant only insofar as it bears on [the applicant's] *present* moral character.") (emphasis in original). In essence, Guerrero argues that it is possible that all of the child sexual abuse occurred prior to March 28, 1993, when his step-daughter was only seven or eight years old, instead of later when she was 10 years old, and that this possibility somehow changes the inquiry as to his moral character. That is simply not a tenable position.

In sum, Guerrero cannot escape the "catch-all" provisions of 8 USC § 1101(f) and 8 CFR § 316.10(b). Being convicted for acts of child sexual abuse which were committed prior to being naturalized supports a finding of lack of good moral character. 8 USC § 1101(f); 8 CFR § 316.10(b)(3). Thus, Guerrero's naturalization should be revoked because he committed crimes of moral turpitude which display a lack of good moral character.

### C. Count III

Count III alleges that Guerrero's naturalization should be revoked under 8 USC § 1451(a) because he concealed and willfully misrepresented material facts that he had committed acts lacking of good moral character or moral turpitude. This claim is based both on a written

misrepresentations in Guerrero's answer to Question 15(a) on Form N-400 and oral misrepresentation in his interview.

This statute has four requirements: (1) the naturalized citizen must have misrepresented or concealed some fact; (2) the misrepresentation or concealment must have been willful; (3) the fact must have been material; and (4) the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment. *Kungys v. United States*, 485 US 759, 767 (1988). "The test of whether [a defendant's] concealments or misrepresentations were material is whether they had a natural tendency to influence the decisions of the [INS]." *Id* at 771.

Guerrero seeks to create a genuine issue of material fact that he made any willful misrepresentation because: (1) he lacked proficiency in English when he applied for naturalization; (2) he did not personally complete the forms; and (3) there is no documentation as to what questions he was asked and answered in his interview. The Government argues that Guerrero cannot hide behind his poor English skills, noting that he: (1) checked the box affirming that he can "speak, read, and write English;" (2) wrote at the bottom of his application "I like living in Oregon;" and (3) signed his application "certify[ing] . . . under penalty of perjury . . . that this application and the evidence submitted with it is all true and correct." CAF, pp. 6-8. Further, Guerrero spoke with the INS officer during his interview "about what state [the officer] was originally from and where he had been assigned in the course of [the officer's] work for the INS" and was "asked some questions about the history and government of the United States." Guerrero Decl., ¶¶ 9-10.

13 - FINDINGS AND RECOMMENDATIONS

However, this court need not resolve this dispute as to whether Guerrero's proficiency in English was sufficient to make a willful misrepresentation because of its finding with respect to Count II.

### III. Guerrero's Motion for Summary Judgment

#### A. Count I

Guerrero argues that Count I fails to state a claim because the Government has not shown that he was convicted of or admitted that he committed crimes of moral turpitude during the statutory period under 8 USC § 1101(f)(3). As discussed above, the court need not resolve this issue due to the finding as to the Government's claim for denaturalization based on Count II.

#### B. Dismissal With Prejudice

Guerrero also seeks to dismiss this case because *Guerrero I* should have been dismissed with prejudice and thus bar refiling of the same action. He argues that because the Government did not seek prompt dismissal, resisted Guerrero's motion to dismiss, and filed two motions to amend the pleadings to attach the requisite affidavit of good faith in *Guerrero I*, he was put to the trouble of preparing a defense. Thus, based on *Costello v. United States*, 365 US 265 (1961), he claims that Judge King erred by dismissing *Guerrero I* without prejudice.

Judge King considered and rejected this same argument. Guerrero could not appeal that decision because the judgment in *Guerrero I* was entered without prejudice. *Environmental Prot. Info. Ctr., Inc., v. Pacific Lbr. Co.*, 257 F3d 1071, 1075-76 (9th Cir 2001). Therefore, he seeks to preserve his claim of error by Judge King by renewing it in this case. RESTATEMENT (SECOND) OF JUDGMENTS, § 28(1) ("If review is unavailable because the party who lost on the

issue obtained a judgment in his favor, the general rule of [issue preclusion] is inapplicable by its own terms.")

Guerrero has offered nothing new to challenge Judge King's decision. Therefore, his motion to dismiss the Complaint on this basis should be denied.

## RECOMMENDATIONS

The Government's Motion for Summary Judgment (docket # 7) should be GRANTED as to Count II and denied as moot as to Counts I and III, and Guerrero's Motion for Summary Judgment (docket # 11) should be denied. Accordingly, the court should enter a judgment in favor of the Government.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due January 7, 2011. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED this 21st day of December, 2010.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge